UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60352-DIMITROULEAS/VALLE

PETER EDWARDS,

    Plaintiff,

v.

FUTURE MOTION, INC.,

    Defendant.
_____/

### REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss or, in the Alternative, Motion for Sanctions Due to Plaintiff's Spoliation of Evidence and Request for Oral Argument (ECF No. 35) (the "Motion").[1]  United States District Judge William P. Dimitrouleas has referred the Motion to the undersigned for appropriate disposition or a report and recommendation. (ECF No. 36).

Having reviewed the record, the Motion, Plaintiff's Response (ECF No. 41), Defendant's Reply (ECF No. 42), and being otherwise duly advised in the matter, the undersigned recommends that the Motion be **DENIED** for the reasons set forth below.

### I.   BACKGROUND

This is a personal injury action asserting claims of negligence and products liability against the manufacturer of the Onewheel+ ("Onewheel" or the "board").  According to the Complaint, a Onewheel is a self-balancing, battery powered, one-wheeled electric transport also described as an

---

[1] Defendant's request for oral argument, *see* (ECF No. 35 at 19-20), is denied as the Motion is determined on the record.  The undersigned is also unpersuaded by Plaintiff's argument that the Motion should be denied procedurally for failure to confer. *See* (ECF No. 41 at 2).  Rather, the Motion is determined on the merits.

"electric skateboard." (ECF No. 1-2 at 3, 5). In relevant part, Plaintiff alleges that on February 2, 2019, he was riding the Onewheel with a nearly full battery, when without "pushback" or warning, the Onewheel suddenly "nosedived," causing the front of the board to violently and unexpectedly slam into the pavement, throwing Plaintiff forward from the board (the "Incident"). *Id.* at 8. Plaintiff further alleges that as a result of the Incident, he suffered severe trauma and injuries, including a fractured left forearm, fractured shaft of the left ulna, and abrasions to his right hand and left knee. *Id.* Plaintiff thereafter underwent surgery for the fractures.

In October 2021, more than two years after the Incident, Plaintiff filed a two-count Complaint in state court alleging negligence and strict liability. *See generally* (ECF No. 1-2). After engaging in jurisdictional discovery in state court, on February 16, 2022, Defendant removed the case to this Court. (ECF No. 1). On August 24, 2022, the instant Motion followed. (ECF No. 35).

In the Motion, Defendant seeks various forms of sanctions due to Plaintiff's purported spoliation of evidence: (i) dismissal of the action; (ii) striking the claims of manufacturing or design defect; or (iii) an adverse inference instruction to the jury. *See generally* (ECF Nos. 35, 42). Defendant's request for sanctions is based on allegations that Plaintiff failed to preserve the Onewheel in the same condition as when the Incident occurred. More specifically, after the Incident, Plaintiff returned the Onewheel to his friend (and owner of the board) who had possession of the Onewheel for more than two years, before the board was retrieved and provided to Plaintiff's counsel. *See* (ECF No. 35 at 2). Defendant further alleges that, at some point, a paralegal with Plaintiff's counsel's office charged the Onewheel's battery before Defendant had an opportunity to inspect the board. *Id.* Defendant thus argues that Plaintiff destroyed critical evidence regarding the battery level at the time of the Incident.

In response, Plaintiff argues that he returned the Onewheel to its rightful owner sometime after the Incident not knowing that he should preserve the condition of the board and not recharge the battery. (ECF No. 41 at 2). Plaintiff adds that counsel's paralegal did not and could not have destroyed evidence because the board had been used for two years by its owner before the battery was recharged at counsel's office. *Id.* at 6. In sum, Plaintiff asserts that failure to preserve the condition of the Onewheel was not deliberate or done in bad faith, so that sanctions are inappropriate. *Id.*

## II.    LEGAL STANDARD

In a diversity action such as the instant case, federal law governs the imposition of spoliation sanctions.[2] *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) ("conclud[ing] that federal law governs the imposition of sanctions for failure to preserve evidence in a diversity suit."); *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (citation omitted); *see also Tesoriero*, 965 F.3d at 1184 ("Spoliation [is] the destruction of evidence or the significant and meaningful alteration of a document or instrument."). Although federal law governs, "the Court may look to state law for guidance to the extent that it is consistent with federal law." *Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1291 (citation omitted).

The moving party carries the burden of establishing that: (i) the missing evidence existed at one time; (ii) the alleged spoliator had a duty to preserve the evidence; and (iii) the evidence

---

[2] Plaintiff is a resident and citizen of Florida and Defendant is a Delaware corporation, with its principal place of business in California. (ECF No. 1 ¶¶ 7, 8). Moreover, according to the Notice of Removal, Plaintiff admits that the amount in controversy exceeds $75,000. *Id.* ¶ 12. Accordingly, diversity of citizenship exists under 28 U.S.C. § 1332.

was crucial to the movant being able to prove its prima facie case or defense." *Penick*, 481 F. Supp. 3d at 1291 (citations omitted). Even if all three elements are met, "a party's failure to preserve evidence rises to the level of sanctionable spoliation only where the absence of that evidence is predicated on bad faith, such as where a party purposely loses or destroys relevant evidence." *Penick*, 481 F. Supp. 3d at 1291 (citation and quotation omitted). Mere negligence in losing or destroying evidence is not enough for an adverse inference, as "it does not sustain an inference of consciousness of a weak case." *Vick v. Texas Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)[3]; *see also In Matter of Complaint of Bos. Boat III, L.L.C.*, 310 F.R.D. 510, 516 (S.D. Fla. 2015) (noting that "even grossly negligent conduct would not justify [an adverse inference] jury instruction when it is not accompanied by bad faith").

If direct evidence of bad faith is unavailable, the moving party may establish bad faith through circumstantial evidence. *Hyundai Motor Am. Corp. v. N. Am. Auto. Servs., Inc.*, No. 20-CV-82102, 2021 WL 3111191, at *10 (S.D. Fla. July 22, 2021); *Penick*, 481 F. Supp. 3d at 1291 (citations omitted). Circumstantial evidence of bad faith is found where: (i) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (ii) the spoliating party engaged in an affirmative act causing the evidence to be lost; (iii) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (iv) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Hyundai Motor*, 2021 WL 3111191, at *10; *Penick v.*, 481 F. Supp. 3d at 1291 (citations omitted). The party seeking the sanctions must establish all four of these factors where there is no direct evidence of bad faith. *Penick*, 481 F. Supp. 3d at 1291 (citations omitted).

---

[3] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

Additionally, district courts have broad discretion to impose sanctions based on the court's inherent "power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury*, 427 F.3d at 944. Factors to consider when imposing sanctions include: "(i) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured; (ii) the practical importance of the evidence; (iii) whether the spoliating party acted in bad faith; and (iv) the potential for abuse if sanctions are not imposed." *Tesoriero*, 965 F.3d at 1184.

Lastly, sanctions may include "(i) dismissal of the case; (ii) exclusion of expert testimony; or (iii) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Flury*, 427 F.3d at 945. Dismissal represents the most severe sanction available to a federal court, and therefore is only imposed "where there is a showing of bad faith and where lesser sanctions will not suffice." *Flury*, 427 F.3d at 944; *Oil Equip. Co. Inc. v. Mod. Welding Co. Inc.*, 661 F. App'x 646, 653 (11th Cir. 2016). "Because this Circuit requires a showing of bad faith before sanctioning a party when there is spoliation of evidence, courts in this Circuit must refrain from imposing sanctions when no bad faith is shown." *Penick*, 481 F. Supp. 3d at 1291 (citations omitted).

### III.  DISCUSSION

The Motion involves two issues: (i) whether the respective handling of the Onewheel by Plaintiff and Plaintiff's counsel constitutes spoliation of evidence; and if so, (ii) whether sanctions are warranted.  For the reasons discussed below, the undersigned answers no to both questions.

#### A. The Handling of the Onewheel

This case presents two instances of potential spoliation involving the handling of the Onewheel. The first instance of potential spoliation involves Plaintiff's failure to preserve the Onewheel after the Incident by returning the board to the rightful owner, who then had possession

5

of the board for more than two years before Plaintiff filed the instant action against Defendant. Plaintiff admitted that he did not know for certain whether the board's owner used the Onewheel during this time, but is "sure [the board] was charged and ridden numerous times while it was in [the owner's] possession." (ECF No. 41-3 ¶ 6). The second instance of potential spoliation involves the conduct of a paralegal in Plaintiff's counsel's office, who charged the board's battery prior to its inspection by Defendant. Each instance is separately discussed below.

### B. Plaintiff's Failure to Preserve the Onewheel Lacked Bad Faith

Defendant has sufficiently established the three elements of spoliation based on Plaintiff's failure to preserve the Onewheel after the Incident: (i) the missing evidence existed at one time; (ii) the alleged spoliator had a duty to preserve the evidence; and (iii) the evidence was crucial to the movant being able to prove its prima facie case or defense." *Penick*, 481 F. Supp. 3d at 1291 (citations omitted). More specifically, it is undisputed that the Onewheel's battery level could have been ascertained immediately after the Incident. On this issue, Defendant argues, *see* (ECF Nos. 35 at 31, 35-2 ¶ 8), and Plaintiff does not dispute, that had the Onewheel remained off (without being used or charged after the Incident), Defendant would have been able to determine the battery's charge level at the time of the Incident. (ECF No. 35-2 ¶ 8). Second, despite Plaintiff's sworn statement that he "had no understanding that the [Onewheel's] use or charging could impact [his] case," *see* (ECF No. 41-3 ¶ 8), he also affirmed that—shortly after the Incident—he discussed the possibility of bringing a lawsuit against Defendant. (ECF No. 41-3 ¶ 4). Thus, Plaintiff knew or should have known that he had duty to preserve the Onewheel immediately after the Incident or at least when he sought counsel a few weeks later. *See, e.g., Penick*, 481 F. Supp 3d. at 1293 (concluding that plaintiff knew or should have known of duty to preserve generator when he retained counsel and it was patently obvious that generator would be relevant to potential litigation). Additionally, the battery level is clearly relevant where Plaintiff

alleges that he was riding the Onewheel with "a nearly full battery," and the Onewheel's instructions explain the importance of the board's battery level. *Compare* (ECF No. 1-2 at 8), *with* (ECF No. 35 at 3-4). Thus, evidence regarding the battery level at the time of the Incident is crucial to the claims and defenses in the case. Indeed, Plaintiff's counsel's website instructs potential plaintiffs that after a Onewheel accident, they should "preserve the device, charger, literature, packaging and phone application for examination by [the] attorneys". (ECF No. 35-1 ¶ 6). Accordingly, the undersigned finds that Defendant has met its burden to show spoliation based on Plaintiff's failure to preserve the Onewheel after the Incident.

To warrant sanctions, however, Defendant must also establish (by direct or circumstantial evidence) that Plaintiff's failure to preserve the Onewheel was in bad faith. Bad faith in the context of spoliation does not require malice or ill-will, but rather conduct evidencing more than mere negligence. *Penick*, 481 F. Supp. 3d at 1293-94 (discussing the approach of courts in this District on establishing bad faith in the context of spoliation); *see, e.g.*, *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1350-51 (S.D. Fla. 2016) (noting that "bad faith" "does not require malice and is defined by weighing the degree of the spoliator's culpability against the prejudice to the opposing party); *Schultze v. 2K Clevelander, LLC*, No. 17-CV-22684, 2018 WL 4859071, at *6 (S.D. Fla. Oct. 4, 2018) (bad faith spoliation existed even though defendant's destruction of documents was "systematic and regular"); *St. Cyr v. Flying J Inc.*, No. 06-CV-13-33TEM, 2007 WL 1716365, at *5 (M.D. Fla. June 12, 2007) (finding a minimal degree of bad faith where relevance of van was reasonably foreseeable and plaintiffs failed to preserve it for defendant's inspection).

Here, there is no evidence that Plaintiff's handling of the Onewheel was intended to harm Defendant or obstruct the lawsuit. Rather, after the Incident and around the time that he initially sought counsel, Plaintiff returned the board to its rightful owner who had exclusive access to the

board.  (ECF No. 41-3 ¶ 6).  On these facts, the undersigned is persuaded that Plaintiff has credibly explained his reason for returning the Onewheel to its owner and not preserving the board immediately after the Incident.  Accordingly, Defendant has not met its burden to demonstrate that Plaintiff acted in bad faith and this instance of spoliation is not a basis for sanctions.  *See, e.g.*, *Sanz v. Wells Fargo Bank*, No. 19-CV-23122, 2021 WL 2530257, at *6 (S.D. Fla. June 21, 2021) (denying motion for spoliation where party had credibly explained the delayed discovery of employment file); *Wilson v. Wal-Mart Stores, Inc.*, No. 07-CV-394-OC-10 GRJ, 2008 WL 4642596, at *2 (M.D. Fla. Oct. 17, 2008) (denying motion for spoliation where document destruction was part of company's business custom and information not relevant to the case at issue); *cf. Schultze*, 2018 WL 4859071, at *6 (concluding there was no credible reason for shredding relevant documents during ongoing litigation).

### C.  Counsel's Charging of the Onewheel Was Inconsequential

The Court next considers Plaintiff's counsel's charging of the Onewheel's battery more than two years after the Incident.  As noted above, during the two years after the Incident, the owner had exclusive use of the Onewheel.  (ECF No. 41-3 ¶ 6).  Plaintiff does "not know how often [the owner] used the Onewheel, but [Plaintiff is] sure it was charged and ridden numerous times while it was in [the owner's] possession."  *Id*.  When Plaintiff retained counsel, he was told that the board was a key piece of evidence and retrieved it from the owner.  *Id*. ¶ 7.  Sometime around February 2021, Plaintiff provided the Onewheel to counsel.  (ECF No. 41-1 ¶ 3).  Thereafter, without an instruction from counsel, a paralegal charged the Onewheel, which Defendant found charging at the May 2022 inspection.  (ECF Nos. 35-2 ¶ 5, 41-1 ¶ 3).  At that time, the board's battery level was 87%.  (ECF No. 35-2 ¶ 5).

On these facts, the Court finds that the missing evidence (i.e., the battery level at the time of the Incident) no longer existed when counsel's paralegal charged the battery more than two

8

years *after* the Incident. Thus, Defendant has failed to prove the initial and necessary element for spoliation, which requires that the missing evidence existed at the time when counsel took possession of the Onewheel. *Cf. Penick*, 481 F. Supp. 3d at 1291 (granting a rebuttable adverse inference for spoliation of evidence). Thus, although counsel undoubtedly had a duty to preserve the condition of the Onewheel and was aware of the importance of the battery level as it pertains to the claims and defenses in this case, counsel's handling of the board—albeit potentially careless and improper—cannot rise to the level of spoliation warranting sanctions. Rather, the board's battery had already been altered by the intervening use and suspected recharging by its owner after the Incident and before the board was provided to counsel. Accordingly, Defendant has failed to establish that counsel spoliated evidence. Plaintiff's claims should proceed and the parties should be permitted to present evidence to the jury regarding the handling of the Onewheel after the Incident without any adverse inference instruction or other sanction.

### IV.  RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss or, in the Alternative, Motion for Sanctions Due to Plaintiff's Spoliation of Evidence and Request for Oral Argument (ECF No. 35) be **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on December 22, 2022.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge William P. Dimitrouleas
   All Counsel of Record